## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**VERA R.,**[1]

      **Plaintiff,**                    **Case No. 3:20-cv-17465**
                                                **Magistrate Judge Norah McCann King**

    **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Vera R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

### I.    PROCEDURAL HISTORY

      On November 21, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since March 30, 2017. R. 68, 82, 162−68. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 99–104, 106–08. Plaintiff sought a *de novo* hearing before an

administrative law judge. R. 109. Administrative Law Judge ("ALJ") Peter Lee held a hearing on

January 9, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational

expert. R. 34–67. In a decision dated February 4, 2020, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act at any time from March 30, 2017,

Plaintiff's alleged disability onset date, through the date of that decision. R. 20–28. That decision

became the final decision of the Commissioner of Social Security when the Appeals Council

declined review on October 2, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42

U.S.C. § 405(g). ECF No. 1. On May 5, 2021, Plaintiff consented to disposition of the matter by

a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Rules of Civil Procedure. ECF No. 9.[3] On May 6, 2021, the case was reassigned to the

undersigned. ECF No. 10. The matter is ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's

___

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining

whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4).

"The claimant bears the burden of proof at steps one through four, and the Commissioner bears

the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)

(citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 30, 2017, her alleged disability onset date, and the date of the decision. R. 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees bilaterally, status-post right knee arthroscopic surgery, bilateral plantar fasciitis, history of scleroderma and Raynaud's disease, diabetes, and hypertension. R. 22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22−23.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to additional limitations. R. 23−27. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an accounting clerk. R. 27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 30, 2017, her alleged disability onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial

evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On September 25, 2017, James Patti, M.D., Plaintiff's treating orthopedic surgeon,

completed a seven-page, check-the-box, fill-in-the-blank form entitled "Spinal Impairment

Questionnaire." R. 540−46 (the "September 2017 opinion"). Dr. Patti noted that he had treated

Plaintiff every four to six weeks beginning on March 29, 2017, and most recently on September

11, 2017. R. 540. Dr. Patti diagnosed spondylosis without myelopathy or radiculopathy

(cervical) and spondylosis without myelopathy or radiculopathy (lumbar) and opined that

Plaintiff had a poor prognosis. *Id*. In support of these diagnoses, Dr. Patti pointed to the

following positive clinical findings: decreased range of motion (flexion and extension) in the

lumbar area; tenderness in the cervical area localized at C5/6 and C6/7; tenderness in the lumbar

area localized at L4/5 and sacrum; reflex changes in the cervical area at brachioradialis R:1/2,

L:1/2, biceps R:1/2, L:1/2, and triceps R:1/2, C:1/2; tenderness in the lumbar area localized at

patellar R:1/2, L:1/2 and Achilles R:1/2, L:1/2. R. 540−41. Dr. Patti also identified the following

laboratory and diagnostic test results to support his diagnosis: a May 2017 cervical MRI that

revealed herniated nucleus pulposus ("HNP") at C5-6 with spinal cord compression and a May

2013 lumbar MRI that revealed a HNP at L4/5 bilaterally (left greater than right). R. 542. Dr.

Patti listed Plaintiff's symptoms as "stabbing and aching pain. Paresthesia left hand. Decreased

Range of Motion" and indicated that Plaintiff's symptoms and functional limitations are

reasonably consistent with her physical and/or emotional impairments described in the

evaluation. *Id*. Dr. Patti explained that Plaintiff's constant "stabbing, aching, throbbing" pain was

located in the L4/5, sacrum, C5/6, and C6/7. *Id*. According to Dr. Patti, movement, bending,

walking, and standing were precipitating factors leading to pain. R. 542−43. Dr. Patti noted that

he was unable to completely relieve pain with medication without unacceptable side effects. R. 543. As a result of Plaintiff's impairments, Dr. Patti opined that in an eight-hour day during a normal competitive five-day-a-week work environment on a sustained basis, Plaintiff could sit for one hour and stand/walk for 0-1 hour. *Id.* In Dr. Patti's opinion, it was necessary or medically recommended that Plaintiff not sit continuously in a work setting and that she get up and walk around every hour for fifteen minutes. *Id.* Dr. Patti similarly opined that it was necessary or medically recommended that Plaintiff not stand/walk continuously in a work setting. *Id.* Dr. Patti also opined that Plaintiff could occasionally lift and carry up to ten pounds and R. 543−44. Dr. Patti indicated that, in addition to medication, Plaintiff engaged in physical therapy. R. 544. Plaintiff's experience of pain or other symptoms were never severe enough to interfere with her attention and concentration. *Id.* According to Dr. Patti, Plaintiff's impairments would last at least twelve months, but he denied that emotional factors contributed to the severity of her symptoms and functional limitations. *Id.* Dr. Patti also denied that Plaintiff was a malingerer. R. 545. Dr. Patti opined that Plaintiff was capable of low stress work. *Id.* According to Dr. Patti, Plaintiff needed to take unscheduled breaks to rest every hour for fifteen minutes during an eight-hour work day. *Id.* Plaintiff's condition interfered with her ability to keep her neck in a constant position, *e.g.*, looking at a computer screen or looking down at a desk; he denied that Plaintiff could perform a full-time, competitive job that requires that activity on a sustained basis and he opined that Plaintiff's impairments were likely to produce "good days" and "bad days." *Id.* Dr. Patti also opined that, on average, Plaintiff was likely to be absent from work more than three times a month as a result of her impairments or treatment and that she should not engage in pushing, pulling, kneeling, or bending. R. 545−46. In Dr. Patti's best medical opinion, February 29, 2017, was the earliest date to which this description of Plaintiff's symptoms and limitations

applied. R. 546.

In a note dated August 29, 2018, Dr. Patti stated as follows:

Patient has been treating with me since 3/29/2017. She suffers from significant disability due to her neck and back. She has been diagnosed with multiple herniated discs and spondylosis of both the lumbar and cervical spines. Any and all activities of daily living including but not limited to standing, sitting, bending, lifting, and walking cause increased pain and affect her daily life. Her ability to do work at a desk and on a computer cause significant pain in her neck making this very difficult to do for any amount of time. She has attempted a lengthy amount of time in physical therapy without much relief. She is now attempting to try epidural injections to possibly alleviate her constant pain.

R. 1286 (the "August 2018 opinion").

In a letter dated September 4, 2018, Dr. Patti stated as follows:

Vera R[.] has been treating with me since 3/29/2017. She suffers from significant disability due to her neck and back. She has been diagnosed with multiple herniated discs and spondylosis of both the lumbar and cervical spines. Any and all activities of daily living including but not limited to standing, sitting, bending, lifting, and walking cause increased pain and affect her daily life. Her ability to do work at a desk and on a computer causes significant pain in her neck making this very difficult to do for any amount of time. She has attempted a lengthy amount of time in physical therapy without much relief. She is now attempting to try epidural injections to possibly alleviate her constant pain.

R. 1314 (the "September 2018 opinion").

On September 20, 2019, Dr. Patti completed a seven-page, check-the-box, fill-in-the-blank form entitled "Lower Extremities Impairment Questionnaire." R. 1459−65 (the "September 2019 opinion"). Dr. Patti noted that he had treated Plaintiff every four to eight weeks beginning on March 29, 2017, and most recently on September 18, 2019. R. 1459. Dr. Patti diagnosed cervical HNP, cervical radiculopathy; lumbar HNP, lumbar radiculopathy; and lumbar spondylosis. *Id*. In support of these diagnoses, Dr. Patti pointed to the following positive clinical findings: decreased range of motion in the cervical and lumbar areas; tenderness at C5/6 and C6/7; pain and tenderness at L4/5 and sacrum; joint instability; muscle spasm in the cervical and

10

lumbar areas; muscle weakness in the glenohumeral ligament ("GHL"); decreased reflexes in cervical and lumbar spine; positive sitting straight leg raising test (left at 60 degrees and right at 60 degrees); ambulating with a cane; and decreased reflexes in biceps, triceps, brachioradialis, patellar, and Achilles. R. 1459−60. Plaintiff's treatment included prescribed and over-the-counter medications; "HEP"; physical therapy; lumbar epidural; and lumbar facet injection, all of which provided either temporary or no relief. R. 1461. Dr. Patti indicated that Plaintiff's course of treatment was consistent with the symptoms and limitations described in the questionnaire. *Id.* Dr. Patti denied that Plaintiff was able to "ambulate effectively" as shown by an ability to perform the following activities on a sustained basis: walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation, including climbing into/off a bus; carry out routine ambulatory activities, including shopping and banking; and climb a few stairs at a reasonable pace with use of only a single handrail. R. 1462. According to Dr. Patti, Plaintiff must use a cane or other assistive device while standing or walking. *Id.* In an eight-hour workday, Plaintiff could perform a job in a seated position for less than one hour and could stand/walk for less than one hour. *Id.* Dr. Patti opined that it was medically necessary for Plaintiff to avoid continuous sitting in an eight-hour workday, finding that Plaintiff must get up from a seated position every 20 minutes and could return to sitting after approximately one hour. *Id.* Dr. Patti also opined that it was medically necessary for Plaintiff to frequently elevate both legs to waist level while sitting. *Id.* According to Dr. Patti, Plaintiff was unable to lift or carry up to five pounds during a workday and he recommended a single-point cane. R. 1463. Dr. Patti opined that, in an average eight-hour workday, Plaintiff could occasionally (up to one-third of an eight-hour workday) use foot controls (such as in a car) and rarely push and pull using her lower extremities. *Id.* Dr. Patti also opined that Plaintiff's symptoms would likely increase if she were

11

placed in a competitive work environment and that, in an average eight-hour workday, Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to frequently (from one-third to two-thirds of an eight-hour workday) interfere with attention and concentration. *Id.* Plaintiff would need to take unscheduled breaks every fifteen to twenty minutes to rest for one hour before returning to work. R. 1464. Dr. Patti opined that Plaintiff would likely be absent from work more than three times a month. *Id.* Dr. Patti indicated that Plaintiff had constant pain in her cervical and lumbar areas and that activities of daily living precipitate and/or aggravate her pain. *Id.* Plaintiff was able to travel to and from her house and his medical office and prepare meals unassisted and without problem, and could take care of personal hygiene with assistance. *Id.* Dr. Patti expected Plaintiff's impairments to last at least twelve months and denied that she was a malingerer. *Id.* Dr. Patti noted that Plaintiff has good days and bad days and indicated that her symptoms and functional limitations as detailed in the questionnaire were reasonably consistent with the clinical and/or objective findings in the report. R. 1465. In his best medical opinion, Plaintiff's symptoms and related limitations as detailed in the questionnaire applied as far back as March 30, 2017. *Id.*

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Patti's opinions, resulting in a flawed RFC. *Plaintiff's Brief*, ECF No. 18, pp. 26−36; *Plaintiff's Reply Brief*, ECF No. 22, PAGEID##1605−1607. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, an

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

---

[4] As previously noted, Plaintiff's claim was filed on November 21, 2017.

13

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can never climb ladders, ropes, or scaffolds; should never be exposed to unprotected heights or hazardous machinery; can occasionally climb ramps and stairs; never crawl; and can occasionally kneel, stoop, crouch, and balance. In addition, the claimant should have no exposure to extremes in cold conditions. In addition, she can sit for up to six hours in an eight-hour day, with the option to stand or change position while being off-task no more than five minutes per hour. She can stand and/or walk for two hours in an eight-hour day and be able to use a hand-held assistive walking device.

R. 23. In reaching this determination, the ALJ, *inter alia*, did not find Dr. Patti's opinions

persuasive, reasoning as follows:

With regard to opinion evidence, in a medical source statement dated September 2017, Dr. Patti opined, inter alia, that the claimant is limited to lifting and carrying no more than 10 pounds occasionally, and is restricted to standing and walking less than one hour, and sitting no more than one hour, in an eight-hour day. He also noted that the claimant is incapable of even low stress work and would be absent from work more than three times per month (Exhibit 6F, pg. 5-7). [This opinion] is substantially similar [to the] opinion in September 2019, except that he noted that the claimant is unable to lift even minimal weight (Exhibit 29F). However, I do not find these opinions persuasive. Although Dr. Patti has served as the claimant's treating physician, *his finding the claimant so substantially limited in her ability to sit is not borne out by the treatment record.* Furthermore, *his opinion contradicts the claimant's own hearing testimony in which she noted that she can lift a gallon of milk.*

In a report stated August and September 2018, Dr. Patti indicated that activities such as standing, sitting, bending, lifting, and walking increase the claimant's pain and affect her daily life. He also noted that the claimant has difficulty working at a desk or using a computer due to neck pain (Exhibit 18FF [sic], pg. 1 [sic]; 19F, pg. 2). I do not find this opinion persuasive. Although the residual functional capacity limits the claimant to sedentary work, this opinion by Dr. Patti is vague and fails [to] provide specific, quantifiable limitations.

R. 26 (emphasis added).

Plaintiff challenges, *inter alia*, the ALJ's summary conclusion that Dr. Patti's September

2017 and September 2019 opinions were not persuasive without any explanation. *Plaintiff's*

*Brief*, ECF No. 18, pp. 28−29. Plaintiff contends that the ALJ's "unexplained two-sentence

evaluation of Dr. Patti's [September 2017 and September 2019] opinions was inadequate under

the requirements of 20 C.F.R. § 404.1520c." *Id*. at 28. According to Plaintiff, the ALJ's rejection

of these opinions because the sitting limitation "is not borne out by the treatment record" is

simply a conclusion without any connection to Dr. Patti's reports and notes, precluding judicial

review. *Id.* To the contrary, Plaintiff argues, "the evidence relied on by Dr. Patti [to support his

September 2017 and September 2019 opinions] is borne out by the treatment record[,]" including

through Dr. Patti's notes. *Id*. at 29−31. For example, Plaintiff notes, the medical evidence

includes MRIs of the spine that showed degenerative changes and disc abnormalities; clinical

examinations that found decreased range of motion in the spine; cervical and lumbar spine

tenderness; reflex changes; muscle weakness; and positive bilateral straight leg raising. *Id*. at 30

(citing record evidence). Plaintiff further argues that the ALJ also relied on a mischaracterization

of Plaintiff's hearing testimony in his finding that Dr. Patti's September 2017 and September

2019 opinions conflict with Plaintiff's testimony when, in fact, that testimony is consistent with

these opinions. *Id*. at 31 (citing R. 26, 42−43, 543−44, 1463). In short, Plaintiff argues, the

ALJ's mischaracterization of her testimony and the ALJ's failure to explain his consideration of

Dr. Patti's September 2017 and September 2019 opinions requires remand. *Id*. at 30−36.

The Acting Commissioner contends that the ALJ properly found that Dr. Patti's extreme

limitations in the September 2017 and September 2019 opinions were not persuasive, reiterating

that the ALJ concluded that, although Dr. Patti is Plaintiff's treating physician, his finding that

Plaintiff was "so substantially limited in her ability to sit is not borne out by the treatment record.

Furthermore, his opinion contradicts the claimant's own hearing testimony in which she noted

that she can lift a gallon of milk (Tr. 26, referring to testimony, Tr. 57)." *Defendant's Brief*

*Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 12−13. The Acting Commissioner further

contends that "[t]he lack of any meaningful explanations to support the limitations on the forms

16

rendered the [September 2017 and September 2019] opinions weak support for the conclusions." *Id*. at 13 (citation omitted).

In reply, Plaintiff characterizes the Acting Commissioner's arguments that Dr. Patti's September 2017 and September 2019 opinions were check-box forms with no explanations and therefore weak evidence as nothing more than impermissible *post hoc* rationalization. *Plaintiff's Reply Brief*, ECF No. 22, PAGEID##1605−1606. Plaintiff also points out that Dr. Patti included detailed written findings supporting his conclusions. *Id*. at PAGEID#1606 (citing R. 540−46).

Plaintiff's arguments are well taken. First, the ALJ's only specific reasoning for rejecting Dr. Patti's September 2017 and September 2019 opinions—*i.e.*,  that Plaintiff's hearing testimony that "she can lift a gallon of milk" "contradicts" these opinions—relies on a mischaracterization of the record. Plaintiff clarified in her testimony that she buys milk in containers smaller than a gallon size because a gallon is heavy:

Q And in terms of weight, what's the maximum amount of weight you can lift?

A Container of milk.

Q Okay.

A Are you talking about shopping, sir? Like, going shopping?

Q Any time.

A Yeah, that's –

Q When you say a container, a gallon container?

A That's all heavy.

Q Okay.

A I would actually go lighter. I buy the smaller ones.

Q Okay. Half a gallon?

17

A Yes.

ALJ: Okay.

A And less in the quarts.

R. 42−43. Based on this record, the Court is not persuaded that this hearing testimony contradicts Dr. Patti's September 2017 opinion that Plaintiff can lift and carry up to ten pounds, R. 544, or Dr. Patti's September 2019 opinion that Plaintiff cannot lift and carry up to five pounds during a regular workday, R. 1463. *See also Vega v. Comm'r of Soc. Sec.*, No. 97 CIV.6438, 1998 WL 255411, at *11 n.5 (S.D.N.Y. May 20, 1998) ("The Court takes judicial notice that one gallon of milk weighs approximately 8 1/2 pounds.") (citations omitted); *Kraft, Inc. v. United States*, 30 Fed. Cl. 739, 769 n.20 (1994) ("One quart of milk is equal to 2.15 pounds of milk.").

In addition, as Plaintiff points out, the ALJ simply concluded that Dr. Patti's opined limitation about her ability to sit as set out in the September 2017 and September 2019 opinions "is not borne out by the treatment record." R. 26. The ALJ provided no citation to the record, or other explanation, to support this conclusion. *Id*. Moreover, the ALJ failed to explain how he considered the required factors of supportability and consistency. *Id*. Although the ALJ detailed evidence relating to Plaintiff's physical impairments, it is not immediately apparent to the Court from this recitation of the longitudinal record why the sitting limitation is "not borne out by the treatment record." *See* R. 24−27. In any event, the ALJ does not explain, or even address, why or how Dr. Patti's other opined limitations—*i.e.,* including, *inter alia*, the ability to stand/walk for less than an hour in an eight-hour workday, R. 543, 1462, and the need to take breaks longer than five minutes every hour (fifteen-minute break every hour in September 2017, R. 543, and one-hour break every twenty minutes in 2019, R. 1462)—are unsupported or inconsistent with record evidence. R. 24−27.

18

The Commissioner's revised regulations establish a "minimum level of articulation" required to "provide sufficient rationale for a reviewing adjudicator or court." 82 FR 5844-01. In the absence of this level of articulation by the ALJ, this Court cannot determine whether the ALJ's finding in this regard is supported by substantial evidence. *See also Garry v. Kijakazi*, No. 1:20-CV-01705, 2022 WL 987654, at *6 (M.D. Pa. Mar. 31, 2022) ("Without any explanation as to why the ALJ rejected Dr. Stone's opinion regarding Garry's reaching limitations, we cannot conclude that the he adequately explained how he considered the supportability and consistency of Dr. Stone's opinion. Thus, the ALJ erred in failing to provide a reason as to why he rejected Dr. Stone's opinion related to Garry's reaching limitations. . . . [W]e find that the ALJ's failure to do so frustrates meaningful judicial review and is grounds for remand."); *Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors").

Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Patti's September 2017 and September 2019 opinions is harmless. This is particularly so because, as set forth above, Dr. Patti opined that Plaintiff could stand/walk for less than one hour in an eight-hour workday, R. 543, 1462, and needed to take breaks longer than five minutes every hour (fifteen-minute break every hour in September 2017, R. 543, and one-hour break every twenty minutes in 2019, R. 1462); and the ALJ's RFC does not reflect these limitations. R. 23. Notably, the vocational expert testified that no work would be available to a hypothetical individual who could only, *inter alia*, sit for five minutes, stand for ten minutes, and walk for ten

19

minutes at a time, R. 63, and that limitations to a cumulative total of one hour sitting, one hour standing, and one hour walking in a competitive work setting would be work preclusive. R. 64.

Finally, the Court rejects the Acting Commissioner's argument that the record contains evidence or reasons sufficient to support the ALJ's decision to discount Dr. Patti's September 2017 and September 2019 opinions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 13–14. The ALJ did not rely on this evidence or rationale in considering these opinions. R. 26. The Court must therefore reject the Acting Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[5] Moreover, remand is warranted even if, upon further examination of

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Patti's September 2017 and September 2019 opinions and the RFC determination, the Court does not address those claims.

Dr. Patti's September 2017 and September 2019 opinions and the RFC determination, the ALJ again finds that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  December 27, 2022                          *s/Norah McCann King*
                                                                   NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE